OPINION
Defendant, Janet K. Grubbs, appeals from her conviction and sentence for DUI.
Grubbs was arrested on November 11, 2000. She was charged with DUI, in violation of R.C. 4511.19(A)(1), and speeding in violation of Kettering Ordinance Section 434.03. The charges were filed in Kettering Municipal Court, and Grubbs entered pleas of not guilty.
The matter was tried before a jury on June 6, 2001. Grubbs was found guilty on both counts.
Grubbs filed timely notice of appeal. She presents one assignment of error.
 ASSIGNMENT OF ERROR THE JURY'S VERDICT RENDERED ON JUNE 6, 2001 AND RECORDED BY THE KETTERING MUNICIPAL COURT ON JUNE 7, 2001 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR TESTIMONY PRESENTED AT TRIAL.
An appellate court reviewing the weight of the evidence sits as a "thirteenth juror" and may, within its discretion, act upon a disagreement with the jury's decision. State v. Thompkins (1997),78 Ohio St.3d 380, 388 citing Tibbs v. Florida (1982), 457 U.S. 31,41-43, 102 S.Ct. 2211, 2218-2219, 72 L.Ed.2d 652, 661-662. The appropriate review requires a court to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175; Thompkins, supra, at 387.
"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175. Where judgment resulted from a jury trial, the Constitution of Ohio further limits the exercise of this discretionary power by requiring the concurrence of all three appellate judges. Section 3(B)(3), Article IV, Constitution. See also Thompkins, supra, at 389.
Grubbs essentially argues that the testimony of the City's witnesses was inconsistent, incredible, and unreliable, and that the jury should have instead relied on the testimony of the defense witnesses, Grubbs and her passenger, Lisa George.
The City offered the testimony of officers Ronald Roberts and Jerome Csizma. Roberts testified that at around 1:30 a.m. on November 11, 2000, he clocked Grubbs' Black Toyota traveling at fifty-one miles per hour in a thirty-five mile per hour zone, so he activated his lights and pursued the car. Roberts stated that he followed Grubbs' car with the lights of his cruiser flashing for a good distance, but she failed to pull over. Roberts testified that he was finally able to get her attention with his spotlight, and she braked hard and pulled over. Roberts testified that when he approached the car, he could smell a strong odor of alcohol. He asked Grubbs whether she had been drinking, and after first denying that she had, Grubbs admitted that she had consumed two beers at a party.
Officer Roberts decided to administer field sobriety tests to Grubbs, and called for backup, as is procedure when there is a passenger in the car. Officer Csizma soon arrived, and he observed while Roberts administered the tests.
Roberts testified that Grubbs failed the Horizontal Gaze Nystagmus ("HGN") test, and that she did not mention any eye condition that may have affected her ability to pass the test. Roberts testified that Grubbs had difficulty following his directions, which is an indicator of intoxication, during the administration of the heel-toe test. Grubbs failed the heel-toe test and the one leg stand as well. Roberts stated that Grubbs did not say that these tests would be difficult for her because she hurt her ankle and was wearing an ankle brace. Grubbs also failed the finger to nose test. Roberts testified that Grubbs narrowly passed an alphabet test, skipping one letter, and passed a counting test. Roberts informed Grubbs that she was under arrest for DUI, put her in handcuffs, and placed her in the backseat of his police cruiser. Roberts testified that Grubbs was cooperative when he placed her under arrest.
Officer Csizma corroborated Roberts' testimony. Like Roberts, Csizma did not recall Grubbs mentioning ankle or eye problems while she was performing the sobriety tests. During his contact with Grubbs, Csizma smelled alcohol on her, and found her to be "almost in a stupor." Csizma concluded, based on his contact with Grubbs, that she was impaired and should not be driving.
During the defense's case, Grubbs first called her passenger, Lisa George, as a witness. George testified that Officer Roberts used a demeaning tone with Grubbs. When Roberts approached the car, and Grubbs said that she had not been drinking, George testified that Roberts responded, "do you think I'm [a] F___ing idiot?" George testified that Grubbs informed Roberts of an eye condition and an ankle injury, even showing Roberts her ankle brace, yet he forced her to attempt the tests. George testified that Grubbs was not intoxicated and should not have been arrested.
Finally, Grubbs testified that she had consumed two alcoholic coffee drinks that night and a few sips of wine. Grubbs testified that Roberts used a harsh and intimidating tone with her, and that he forced her to attempt the sobriety tests after she informed him that she suffered from an eye condition and an ankle injury. Grubbs testified that Roberts yelled at her while he was putting the handcuffs on her and when she got into the back of the cruiser before he was able to pat her down. Finally, Grubbs stated that Roberts was hostile to her, and did not adequately explain her options, when he asked her if she would submit to a breathalyser test at the police station.
This evidence fails to demonstrate that the jury either lost its way or committed a manifest miscarriage of justice when it found Grubbs guilty of the crimes charged. While each side presented testimony which could have supported its desired result, it is clear that the jury simply chose to believe the testimony of Officers Roberts and Csizma. That decision is supported by the evidence, and is well within the jury's purview.
We cannot find that the jury's verdict was against the manifest weight of the evidence. The assignment of error is overruled.
 Conclusion
Having overruled the assignment of error presented, we will affirm the judgment from which the appeal was taken.
WOLFF, P.J., and YOUNG, J., concur.